STATE, EX REL. CHARLES ANDERSON, v. A. G. NEWMAN, MORRIS DAVIS, AND F. L. SMITH, COUNTY COMMISSIONERS OF CHEYENNE COUNTY, NEBRASKA.

1. **Counties:** ERECTION OF NEW COUNTY FROM OLD COUNTY. Under the provisions of Sec. 10, Art. I. of Chap. 18, Compiled Statutes of 1887, it is the duty of the county board to make an order providing for the submission of the question of the erection of a new county to a vote of the people of the county to be affected, at the next succeeding general election, when a petition therefor, stating and describing the territory proposed to be taken for such new county, together with its name, and signed by a majority of the legal voters residing in the territory to be constructed from such county, shall be presented.

2. ———: ———. When it is sought to erect from a county more than one new county, and petitions for the submission of the proposition to erect such new counties are severally pre-

sented, they may be separately submitted at the same election, without reference to the number of propositions to be voted upon thereat.

ORIGINAL application for a writ of mandamus.

*Robert Ryan,* for relator.

*W. C. Reilley, H. St. Raynor,* and *J. W. Norvell,* for respondents.

REESE, CH. J.

This is an application to this court in the exercise of its original jurisdiction for a mandamus to the board of county commissioners of Cheyenne county, to require them to submit to the electors of said county the proposition to erect the county of Potter, with boundary lines as described in the petition presented for that purpose. It is alleged in the petition that the proposed new county comprises the extent of territory required by the constitution and laws of the state; that the petition was signed by a majority of the legal voters in the territory to be stricken from the county of Cheyenne; and that. the petitioners have in all respects complied with the requirements of the statutes governing applications of the kind; that the petition was presented to the county board on the 5th day of January, 1888; that no action was, at that time, taken upon the petition, and that they have since refused to submit the proposition; that on the 20th of January and the 16th of February, of the same year, petitions were presented to the county commissioners, signed by the citizens of another portion of said county of Cheyenne, asking for the submission of the question of erecting the county of Kimball. On the 23d day of January and the 6th of February, a similar petition was presented by the citizens of the territory therein described, asking the submission of the proposition to erect the county of Deuel. On the

6th and 16th of February, there were presented petitions for the proposed county of Banner, and on February 6th petitions for the proposed county of Scotts' Bluffs, and the proposed county of Wright, beside petitions praying for the same action as to the several counties as for the proposed county of Potter; that the county commissioners, on the 6th day of February, ordered that the prayers of the petitions from the proposed counties of Kimball, Deuel, Banner, and Scotts' Bluffs should be granted; and that a proposition to erect four new counties out of the territory now embraced in Cheyenne county be submitted to the qualified voters of the said county of Cheyenne, for their action thereon, at the next general election, while no action at all was taken upon the petitions from the proposed counties of Wright and Potter; and that with a view to prevent a vote upon the erection of the proposed new county of Potter, they refused to permit a vote to be taken thereon.

It is not deemed necessary to notice the allegations of the petition to any great extent. The defendants have filed a demurrer, assigning as a ground therefor, that the petition does not state sufficient facts to constitute a cause of action or entitle the relators to the relief prayed. The case presented requires a construction of section 10 of Art. I., Chap. 18, of the Compiled Statutes of 1887. This section is as follows:

"Whenever it is desired to form a new county out of one or more of the then existing counties, and a petition praying for the erection of such new county, stating and describing the territory proposed to be taken for such new county, together with the name of such proposed new county, signed by a majority of the legal voters residing in the territory to be stricken from such county or counties, shall be presented to the county board of each county to be affected by such division, and it appearing that such new county can be constitutionally formed, it shall be the

duty of such county board or county boards to make an order providing for the submission of the question of the erection of such new county to a vote of the people of the counties to be affected, at the next succeeding general election, of which the notice shall be given, the votes canvassed, and the returns made as in cases of election of county officers, and the form of the ballot to be used in the determination of such question shall be as follows: 'For new county,' and 'Against new county.' "

.By this section it is made the duty of the county board to make an order providing for the submission of the question of the erection of a new county, whenever a petition therefor is presented, stating and describing the territory proposed to be taken for such new county, together with its name, and signed by a majority of the legal voters residing in the territory to be stricken from the county, if it appears that such new county can be constitutionally formed.

It was admitted on the argument that all these requirements of law had been complied with. It would therefore seem that the duties of the defendants were plain. But it is insisted that it was not the duty of the county board to submit the proposition to erect Potter county, because they had no authority at a subsequent date to require a vote to be taken upon more than one submission at the same election. The principal question argued by counsel is, as to the authority of the county board to so submit more than one proposition. It is true that the language used in section 10 is in the singular number, and upon a casual reading thereof it would seem that it was the purpose of the legislature to submit but one proposition at a time, but we think that this section does not require such a construction. There is no reason known to the writer why any number of propositions may not be submitted upon the same day, and at the same election, so long as they are clearly and definitely stated and kept

entirely separate, one from the other. The territory embraced in the county of Cheyenne is amply sufficient for the erection of nine counties of respectable size, and indeed almost twice that. number, comprising territory necessary under the constitution to create a county. It is much too large for the convenience of its citizens, and must be subdivided at an early date. The expense and annoyance of holding an election for the purpose of subdivision must constitute quite an item in the economy, financially and otherwise, of any county. This expense and annoyance, multiplied nine or more times, would necessarily become somewhat burdensome. Again, the law requires the submission to be made at the next general election succeeding the presentation of the petition. Should it be deemed advisable to subdivide the county in question, so as to create nine counties, it would require nine years to complete the work. But should it be deemed advisable to so subdivide it as to create counties containing only the amount of territory required in the constitution for a new county, it will take seventeen years, as there could be that number of counties formed out of the territory which now comprises Cheyenne county. It cannot be that the legislature ever intended to impose such a burden upon the people of any part of the state. All the requirements of law can be complied with by submitting the whole question of subdivision at one election. The form of the ballot to be used in the determination of the question of the erection of a new county shall be, "For new county," and "Against new county." This ballot can be so arranged as to refer, in direct terms, to the proposed erection of any new county, by name or description, and the electors can as intelligently vote upon each submission, if placed upon the same sheet of paper, as though the sheet contained but one ballot on the question of new county. Suppose, for instance, the ballot should be so arranged as to submit in one section the proposi-

tion referring to the proposed county of Kimball ; the terms "For new county" or "Against new county," can as clearly apply to the single proposition, to which it is made to refer, with other propositions upon the same sheet, as though no others were present. The whole county will thus vote upon each proposition separately and distinctly from the others, and the popular will be as clearly expressed. In case each of the new counties should receive a majority of all the votes cast at the election, the proper certificates thereof can be made to the secretary of state, and the proper action taken thereon by the secretary and governor, as provided by section 11, as though but one proposition had been submitted.

We think it is clear that it was not the legislative intent to limit the submission to the erection of one county alone, at a time. But one difficulty only could arise, and that would be, where by accident or design the petitions might be so formed as to describe territory which might be included in the territory described in other petitions. This, however, can well be obviated by an understanding prior to the presentation of the petition, as in such cases harmonious action is necessary to a division of any county where it is sought to divide it into more than two new counties. In the case presented by relator's petition, it is shown that the petition for the submission of the question of the proposed new county of Potter was first presented to the county board. As we have seen, it was their duty to call the election as therein requested, and adopting the territory as therein described. The demurrer to the petition is therefore overruled. Defendants will be given twenty days from the filing of this opinion to file their answer. In case they fail so to do, a peremptory writ of mandamus will issue.

ORDER ACCORDINGLY.

THE other judges concur.